IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CRIMINAL NO. _13-cr-30200-MJR_ |
| | ) |
| HARRY ADAM HALTER, JR., | ) |
| | ) |
| Defendant. | ) |

## STIPULATION OF FACTS

Now comes, The United States of America, by Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and through Steven D. Weinhoeft, Assistant United States Attorney, who enters into the following Stipulation of Facts with the Defendant, HARRY ADAM HALTER, JR., by and through himself and his attorney, pertaining to the relevant conduct of the defendant within the scope of U.S.S.G. §1B1.3. The parties hereby stipulate and agree as follows:

### TIF Matters:

1. Tax Increment Financing (hereinafter, TIF) is a form of government spending that permits local governments to invest money into private developments occurring within identified "blighted" geographical areas (designated as TIF districts).

2. The grants that are issued with TIF funds are paid by local government debt that is financed by the anticipated tax revenues that are expected to be generated as a result of the new development. Alternatively stated, TIF expenditures are paid for through government debt that relies on the TIF-supported development to improve property values and increase the tax base to create new tax revenues in the future that will be used to repay the debt.

1

3.   For this reason, it is essential for the long-term solvency of a TIF district that TIF grants actually be spent to improve the property within the TIF district. Without property development that increases the tax base, there is no new revenue to repay the debt created by the TIF grant.

### The Scheme To Defraud:

4.   Harry Halter has owned and operated Town and Country Towing, located at 4975 Bond Avenue, Alorton, Illinois, as a sole proprietorship since approximately 1980. This business offers automotive repair and towing services. As the owner of Town and Country Towing, Halter had the authority to control the business' financial affairs.

5.   On December 2, 2008, **HARRY A. HALTER JR.** completed and signed an application for TIF funding from the Village of Alorton, Illinois. In that application, **HALTER** sought $25,000 purportedly for the construction of a new fence to surround the perimeter of the property of Town & Country Towing, located at 4975 Bond Avenue, Alorton, Illinois.

6.   According to **HALTER's** TIF application, construction on the fencing was scheduled to begin on January 5, 2009, and be completed by February 15, 2009.

7.   The Village of Alorton approved **HALTER's** TIF application, and on January 29, 2009, the village issued a check in the amount of $24,990 for the construction of 750 linear feet of fencing around Town & Country Towing. On February 2, 2009, that $24,990 check was deposited into Region's Bank account 690129****, owned by "Harry A. Halter, DBA Town & Country Towing." The transfer of funds from the Village of Alorton to Town & Country Towing involved a foreseeable interstate wire transmission that involved interstate banking channels.

8.   On January 31, 2009, the balance for the Town & Country Towing account was negative $(-58.45), prior to the deposit of Alorton TIF funds. However, **HALTER** did not use the TIF funds

as intended; rather, he misapplied funds to pay for personal and unrelated business expenses thereby converting those funds for his personal gain and personal enrichment.

9. In the time period beginning January 1, 2009, through March 31, 2009, **HALTER** spent $5,932.38 of the TIF funds on materials related to the construction of the fence. However, rather than using the remaining $19,057.62 as intended, **HALTER** converted those funds to pay personal expenses and business expenses unrelated to the construction of the fence, such as checks to pay personal credit cards and checks to pay Kinkaid Village Marina for personal recreational boating expenses.

### Tax Matters:

10. During the times relevant to this Information, Halter was a commissioned police officer for the Village of Alorton and carried the title of Director of Public Safety. Halter also worked as a part-time police officer for Fairmont City, Illinois. Halter has also held a paid position as a trustee of the Commonfields of Cahokia Public Water District since approximately 2007.

11. Halter hired a number of employees to work at Town and Country Towing. These employees include tow truck drivers, office personnel, and mechanics. On average there were four full-time employees working for Town and Country Towing. There were also a number of part-time employees who worked for Town and Country Towing.

12. Halter did not pay his employees through traditional means, *i.e.,* a paycheck in the amount of wages less applicable withholdings. Rather, Halter's employees utilized time cards to record the number of hours that they worked and then those employees were paid an hourly rate in cash. Applicable federal payroll taxes were not calculated, withheld from the employee, or reported and paid to the Internal Revenue Service.

13. Halter owned Region's Bank account 690129****, in the name of "Harry A. Halter, DBA Town & Country Towing." Halter deposited personal income into his business checking account and he paid personal and household expenses with funds from that business account. Halter conducted business and personal transactions through the extensive use of cash. He did not maintain records to reflect his true income. However, a review of Region's Bank account 690129**** revealed that Halter deposited gross receipts into that account.

14. A significant amount of cash receipts were not deposited into this account; however, most checks and credit card receipts were deposited into this account. The following table depicts the most accurate tax due and owing that could be determined.

| Tax Year | Unreported Taxable Receipts | Tax Due |
|---|---|---|
| a) 2006 | $107,493 | $21,499 |
| b) 2007 | $137,727 | $25,360 |
| c) 2008 | $115,782 | $15,048 |
| d) 2009 | $149,996 | $29,999 |
| e) 2010 | $184,064 | $36,813 |
|  |  | $128,719[1] |

15. Halter committed various overt acts of Spies evasion by comingling business and personal expenses, operating extensively with cash, not keeping accurate business records, and significantly underreporting gross receipts for tax years 2007 and 2008. Subsequent to federal agents conducting a search warrant at Halter's residence and business on August 31, 2011, Halter untimely filed false U.S. 1040 Federal Income Tax Returns significantly underreporting his gross receipts for tax years 2007 and 2008.

---

[1] Because the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income (25% if the taxpayer is a corporation) less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made. This tax computation was completed using a straight 20% method due to the fact business and personal expenses are comingled in Halter's Town and Country checking account. It was determined a more accurate method of computing the tax was not available.

4

16. For the years 2006, 2007, 2008, 2008 and 2010 Halter knowingly and willfully failed to report all of his income to the Internal Revenue Service in order to evade United States tax filing requirements.

UNITED STATES OF AMERICA

STEPHEN R. WIGGINTON
United States Attorney

*(signed)* 7-30-13

STEVEN D. WEINHOEFT
Assistant United States Attorney

**AGREED AS TO FORM AND CONTENT:**

*(signed)*  Date: 7-19-13
HARRY ADAM HALTER, JR.

*(signed)*  Date: 7-26-13
JAMES STERN
Counsel for the Defendant

5